2010 UT App 350

Sabrina RAHOFY, Plaintiff
and Appellant,

v.

Lynn STEADMAN, an individual; and
Steadman Land & Livestock, LLC,
Defendants and Appellees.

No. 20090512–CA.

Court of Appeals of Utah.

Dec. 9, 2010.

Jamis M. Gardner and Thomas W. Seiler, Provo, for Appellant.

Lowell V. Smith and Trent D. Holgate, Sandy, for Appellees.

Before Judges DAVIS, VOROS, and CHRISTIANSEN.

## OPINION

CHRISTIANSEN, Judge:

¶1 We granted plaintiff Sabrina Rahofy's interlocutory appeal to determine whether the district court abused its discretion in granting defendants Lynn Steadman and Steadman Land & Livestock, LLC's motion to compel. We reverse and remand.

## BACKGROUND

¶2 This litigation concerns an automobile accident that occurred in 2005 near Cedar City, Utah. Rahofy provided initial disclosures, which included the medical information relating to the medical treatment she received for the injuries she allegedly suffered as a result of the accident, and answered Defendants' interrogatories.[1] Then, in an attempt to obtain all of Rahofy's past medical and employment records not directly related to the accident, which were located outside of Utah, Defendants sent Rahofy two letters in which they requested she sign authorizations to have the records released directly to Defendants.[2] When Rahofy refused to sign the authorizations to release all of her past medical and employment records, Defendants filed a motion to compel and argued that she should sign the authorizations because the records are relevant, that without the authorizations "Defendants cannot obtain the required information," and that the records are not privileged because Rahofy has

put her medical and employment histories at issue.[3]

¶3 Rahofy responded to Defendants' motion by arguing that she had completely answered all formal discovery requests; that the request to sign the authorizations was an informal request; that had the request been made as a production of documents request, Rahofy "would object [to the request] as vague, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence"; that Defendants failed to prove the records were in Rahofy's possession, which was required for her to produce them; that the medical records were privileged; and that neither the medical nor the employment records were relevant in this case.

¶4 After a hearing, the district court granted Defendants' motion to compel. Concerning Rahofy's employment records, the district court determined that "Defendants may access any employment records" and ordered Rahofy to "execute authorizations for all employment records and return the signed authorizations to the Defendants" within eleven days after the order was filed.[4] With regard to Rahofy's medical records, the district court ordered Rahofy, within eleven days,

> to provide to the Court and to the Defendants a complete list of every medical record [Rahofy] has ever had generated on her behalf, including the date, medical provider, medical problem presented and medical service provided.[5] The list pro-

---

1. Although Rahofy's initial interrogatory answers did not contain the addresses of some of her former employers, she later provided those addresses to Defendants.

2. Defendants requested that Rahofy sign general releases to send to *all* of the medical providers she had seen in the last twenty years and *all* of Rahofy's prior employers so that Defendants could obtain directly from those providers and prior employers *all* of Rahofy's medical and employment records.

3. In their motion to compel, Defendants also argued that Rahofy had not fully responded to a rule 33 interrogatory asking for the addresses of Rahofy's former employers. However, Defendants had overlooked the fact that Rahofy had later provided this additional information. Thus, Defendants acknowledged in their reply brief for their motion to compel that the interrogatory had been completely answered. Had Rahofy not answered the interrogatory, the district court, in its

discretion, could have properly entertained Defendants' motion to compel and could have required Rahofy to answer the interrogatory. *See* Utah R. Civ. P. 33, 37(a)(2)(B). However, because a complete answer had been given to Defendants before the district court addressed the motion, the motion to compel was not based on an insufficient interrogatory answer and is, therefore, not an issue on appeal.

4. In fact, the district court ordered Rahofy "to execute a release so [D]efendant[s] can access any employment records that they want to access with regard to [Rahofy] back to when she was selling ... Girl Scout cookies when she was nine-years old.... [Defendants] can access ... any employment records they want."

5. The district court placed the burden on Rahofy to obtain and disclose all of the requested medical records, even those records that were not in Rahofy's possession:

vided to the Court and to the Defendants must be accurate, or the Court may impose sanctions. [Rahofy] is to designate which of the medical records listed, [she] believes are not relevant to this case and therefore, subject to privacy.

Defendants shall be entitled to receive medical records for those records to which [Rahofy] does not claim a privacy privilege. [Rahofy] is either to disclose those specific records directly to Defendants, or, if [Rahofy] does not have a copy of a specific record in her possession, [she] is required to sign an authorization for release to release those specific records.

Regarding [Rahofy]'s designation of health care providers which [she] claims are privileged and irrelevant to the issues raised in this litigation, Defendants have 30 days after receipt of the list of health care providers which [Rahofy] claims are irrelevant and subject to privacy, to object to [Rahofy]'s designation by filing a motion with the Court.

In the event that Defendants file a motion with the Court, [Rahofy] will have an additional 30 days to obtain all such records from the various health care providers and submit all such records to the Court. The Court will review these records *in camera*, and make a determination as to whether or not they are to be disclosed.

(Emphasis in original.) We granted Rahofy's interlocutory appeal to determine if the district court abused its discretion in enter-

[I]f [Rahofy] doesn't have the copy of the record in [her] possession, ... [she] simply gather[s] the information by calling and talking to the healthcare provider, then [she] is required to sign a release to release those records.... I'm going to throw the onus of the burden back on [Rahofy] with regard to those medical records, and require that [she] gather the information....

Moreover, the district court placed no limits on how far back Rahofy must go to obtain records or what type of medical records she was to provide:

You have 30 days to provide the list of every visit, and as I indicated—what was it, every visit, the date of every visit, the medical problem that was presented and the service that was provided.... That may very well require

taining and granting Defendants' motion to compel.

ISSUE AND STANDARD OF REVIEW

¶ 5 Rahofy challenges the district court's order that granted Defendants' motion to compel. More specifically, Rahofy argues that because Defendants did not formally request the medical and employment records pursuant to rule 34 of the Utah Rules of Civil Procedure, a motion to compel, which requires a formal request, was not proper. Moreover, Rahofy argues that the district court abused its discretion in granting the motion to compel because the records and information sought were not relevant, were privileged, and were not in her possession.[6]

 ¶ 6 We review the district court's decision to grant or deny a motion to compel under the abuse of discretion standard. *See Cannon v. Salt Lake Reg'l Med. Ctr., Inc.,* 2005 UT App 352, ¶ 7, 121 P.3d 74. "[W]e 'will not find abuse of discretion absent an erroneous conclusion of law or where there is no evidentiary basis for the trial court's ruling.' " *Id.* (citation omitted). "[T]he interpretation of a rule of procedure is a question of law," *Brown v. Glover,* 2000 UT 89, ¶ 15, 16 P.3d 540, and "[w]e interpret court rules ... according to their plain language," *Staley v. Jolles,* 2010 UT 19, ¶ 14, 230 P.3d 1007 (internal quotation marks omitted). *See also Arbogast Family Trust v. River Crossings, LLC,* 2010 UT 40, ¶ 18, 238 P.3d 1035 ("When we interpret a procedural rule, we do so according to our general rules of statutory construction.").

that she admit that she had hemorrhoids and went to a doctor for it....

6. Both Rahofy and Defendants argue about the relevance and privileged status of the requested records. While these substantive issues may eventually need to be determined, we review only whether the proper *procedures* were followed to entitle Defendants to a motion to compel the production of those items in the first place. Defendants provided very little legal or factual arguments, either at the district court or on appeal, regarding whether they followed the proper procedures pursuant to rules 34 and 37 of the Utah Rules of Civil Procedure. Because we determine that Defendants did not follow the proper procedures, we do not reach the merits of the other issues Rahofy raises on appeal.

## ANALYSIS

¶ 7 The Utah Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Utah R. Civ. P. 26(b)(1). The rules outline a procedure through which parties involved in litigation can obtain a broad range of discoverable items. *See, e.g., id.* R. 33, 34. "The Utah Supreme Court has stated that the general purpose of discovery is 'to remove elements of surprise or trickery so the parties and the court can determine the facts and resolve the issues as directly, fairly and expeditiously as possible.'" *Cannon,* 2005 UT App 352, ¶ 8, 121 P.3d 74 (quoting *Ellis v. Gilbert,* 19 Utah 2d 189, 429 P.2d 39, 40 (1967)). "[T]he purpose of the rules of civil procedure pertaining to discovery 'is to make procedure as simple and efficient as possible by eliminating any useless ritual, undue rigidities or technicalities....'" *Id.* (citation omitted). Although the rules expressly allow parties to agree to informal discovery procedures, *see* Utah R. Civ. P. 29(2), the discovery rules, in the absence of such an agreement, set forth a procedure to effectuate an efficient discovery process.

¶ 8 The Utah Rules of Civil Procedure allow a trial court to grant a motion to compel discovery, *see id.* R. 37(d), if a party has not adequately responded to a discovery request made in the form of interrogatories, *see id.* R. 33, or a request for production of documents, *see id.* R. 34. *See also Toma v. Weatherford,* 846 F.2d 58, 60 (10th Cir.1988) (interpreting substantially similar federal rule 37 and stating that "Rule 37(a)(2) gives a requesting party under Rules 33 or 34 a specific remedy for failure to answer interrogatories or requests for production: a motion for an order compelling an answer").

¶ 9 Rule 34 requires that a party requesting documents must serve the request, which describes "with reasonable particularity" the item or items requested, Utah R. Civ. P. 34(b)(1), and that the requested documents must be "in the possession, custody or control of the party upon whom the request is served," *id.* R. 34(a)(1). Rule 34 also allows the party receiving the request to make proper objections if the receiving party believes that the documents are protected. *See id.* R. 34(b)(2). Any objections must be specific and made within thirty days. *See id.* Furthermore, all requests, responses, and objections must be signed by an attorney certifying that the request is made in compliance with Utah's laws and rules, that the request is not "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," and that the request is "not unreasonable or unduly burdensome or expensive, given the needs of the case." [7] *Id.* R. 26(g).

■ ¶ 10 The parties agree that Defendants requested Rahofy's medical and employment records through letters.[8] Defendants did not establish before the district court that the letters in which they requested the authorizations be signed were valid requests for documents under rule 34 of the Utah Rules of Civil Procedure. First, Defendants did not establish, or even attempt to establish, before the district court that they

---

.7. One party may question the motives of the other party's refusal to produce documents as an attempt to hide discoverable information. However, when the rules of procedure are followed, an attorney's signature certifies that the objection is made for a proper purpose. *See* Utah R. Civ. P. 26(g). This allows the trial court to impose sanctions if the objection or delay was improper. *See id.* By sending letters rather than a formal document request, not only did Defendants not have to certify that the request was made for a proper purpose, but Rahofy's objections were also not certified as being for a proper purpose. *Cf. Barnard v. Mansell,* 2009 UT App 298, ¶ 8, 221 P.3d 874 (mem.) (discussing the different implications of signing a motion

for sanctions as opposed to signing a warning letter).

8. We note that the record contains Defendants' certificate of service for their request for production of documents from Rahofy. However, the actual request, which presumably contained a list of documents requested that did not include the documents subsequently requested by their letters, is not part of the record. Nevertheless, neither party claims that Defendants requested that Rahofy sign the medical and employment authorizations other than through the letters. Therefore, we consider only whether Defendants' letters satisfied the requirements of rule 34.

served Rahofy with a document request in compliance with the rule, *see id.* R. 34(a)(1). On appeal, Defendants suggest that the letters were properly served, but no record cite or legal authority was presented to establish this claim. Second, Defendants did not describe the items requested "with reasonable particularity," *id.* R. 34(b)(1), but instead broadly requested every document contained in Rahofy's medical and employment records. Finally, Defendants did not even attempt to establish before the district court that the documents being requested were in Rahofy's "possession, custody or control." *Id.* R. 34(a)(1). In fact, Defendants have consistently acknowledged, and the district court likewise acknowledged in its order, that some of these documents were not in Rahofy's possession but in the possession of people or entities located outside of Utah. Therefore we conclude that the district court abused its discretion by granting the motion to compel before Defendants had formally requested the documents under the rules.[9]

■ ¶ 11 Defendants attempted to avoid the requirements of rules 34 and 37 by arguing that the authorizations were the only way to access certain records because those records are located outside of Utah. While ultimately they may be entitled to such records,[10] Defendants must establish their entitlement using the proper procedures. *See Brown v. Glover*, 2000 UT 89, ¶ 30, 16 P.3d 540 ("[A]n attorney has a responsibility to use the available discovery procedures to diligently represent her client. The Utah Rules of Civil Procedure provide the means to do this.").

■ ¶ 12 When documents are in the possession of a third party, the subpoena procedure can be used to obtain those documents. *See* Utah R. Civ. P. 45(a)(1)(C)(iii) (stating that a subpoena "command[s] each person to whom it is directed ... to copy documents or electronically stored information in the possession, custody or control of that person and mail or deliver the copies to the party or attorney responsible for issuing the subpoena before a date certain"); *see also id.* R. 34(c) (stating that the rule for production of documents "does not preclude an independent action against a person not a party for production of documents"). Documents located in another state may be obtained by utilizing the subpoena procedure in that state. Defendants seek records located in Virginia, Illinois, and Hawaii. Although these states differ in their procedure, each allows for the subpoenaing of records located in their state.[11] We readily acknowledge that to ob-

---

9. We do not separately analyze rule 33 because Defendants were clearly requesting that Rahofy facilitate the production of documents, which request would not fall under rule 33 but, rather, under rule 34.

10. Because of the procedural deficiencies in this case, we make no determination as to whether the medical and employment records are relevant or privileged. We also need not make any determination as to the appropriate method for obtaining authorizations for release of records except as stated herein.

11. Virginia has adopted the Uniform Interstate Depositions and Discovery Act, *see* Va.Code Ann. §§ 8.01–412.8 to –412.15 (2010), which Utah has also adopted, *see* Utah Code Ann. §§ 78B–17–101 to –302 (2008). Virginia allows a subpoena obtained from another state to be served in Virginia if "a written statement that the law of the foreign jurisdiction grants reciprocal privileges to citizens of [Virginia] for taking discovery in the jurisdiction that issued the foreign subpoena." Va.Code Ann. § 8.01–412.10(A). The subpoena can be used to produce designated documents and records, *see id.* § 8.01–412.12, and once a party files the subpoena, it is "served in compli-

ance with the applicable statutes of" Virginia, *id.* § 8.01–412.11. If Rahofy were to challenge the subpoena, she could file for a protective order or a motion to quash or modify the subpoena in a Virginia court. *See id.* § 8.01–412.13.

Illinois and Hawaii have not adopted the uniform act. In Illinois, a subpoena may be issued for an action pending in a court of another state. *See* Ill. Sup.Ct. R. 204(b). Although the Illinois rule limits the subpoena power to depositions, Illinois case law has extended the subpoena power to other discovery allowed under Illinois rules. *See Eskandani v. Phillips*, 61 Ill.2d 183, 334 N.E.2d 146, 153 (1975); *Mistler v. Mancini*, 111 Ill.App.3d 228, 67 Ill.Dec. 1, 443 N.E.2d 1125, 1128 (1982); *see also* 735 Ill. Comp. Stat. Ann. 5/2–1003(a) (LexisNexis 2010) (determining scope of discovery in personal injury cases). Hawaii has a somewhat more onerous procedure for obtaining a subpoena that begins with hiring an attorney licensed in Hawaii for the limited purpose of filing a miscellaneous action. *See generally* Haw.Rev.Stat. Ann. § 624–27 to –28 (LexisNexis 2010); Victoria Bushnell, *How to Take an Out–of–State Deposition*, 14 Utah Bar J. 28, 30 (2001). Although subpoenaing out-of-state records is not as simple as having the

tain all of the information Defendants seek they may have to undertake a time-consuming and expensive process. However, because Defendants could have accessed the requested records without circumventing the discovery rules, the district court abused its discretion in entertaining and granting the motion to compel.

¶ 13 We note that this opinion in no way discourages parties from cooperating in informal discovery procedures such as the use of an authorization or a waiver of privilege. In fact, it may be advantageous for parties to agree to more limited requests in exchange for the release of only certain documents to expedite the litigation process and reduce expenses.[12] That being said, if a party objects to informal methods of discovery, the party requesting the documents must take steps pursuant to recognized procedural rules to obtain the relief allowed in our rules.

## CONCLUSION

¶ 14 We reverse and remand because the district court abused its discretion in granting Defendants' motion to compel when Defendants failed to request documents pursuant to the discovery rules.

¶ 15 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and J. FREDERIC VOROS JR., Judge.

opposing party sign an authorization releasing those records, Defendants have argued that a great deal of money is involved in this case. Thus, like all discovery and litigation decisions, Defendants will need to weigh the need for the information against the time and expense of obtaining it. *See* Victoria Bushnell, *How to Take an Out–of–State Deposition*, 14 Utah Bar J. 28, 30 (2001).

12. We remind counsel that the discovery process is intentionally broad and is designed to be simple and efficient. *See* Utah R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter . . . which is relevant to the subject matter involved in the pending action. . . . It is not

ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."); *Cannon v. Salt Lake Reg'l Med. Ctr., Inc.*, 2005 UT App 352, ¶ 8, 121 P.3d 74. Without the open exchange of relevant information between parties, the purpose of the discovery rules will be frustrated and litigation will become costlier than it already is. If there is relevant, nonprivileged information located in Rahofy's past medical and employment records, Defendants are entitled to it if they properly request it, subject to the subpoena procedure of other states.